UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO.  05-36

DANIEL F. FITZGIBBON, JR.,                                                    PLAINTIFF,

v.                                    **OPINION AND ORDER**

MARTIN COUNTY COAL CORPORATION
and SIDNEY COAL COMPANY, INC.,                                   DEFENDANTS.

* * * * * * * * *

This matter is before the Court on the parties' briefs regarding whether the Defendants in this action are collaterally estopped from relitigating the construction of certain terms and phrases contained in the Plaintiff's patent that have already been construed by a West Virginia district court.

I.       **FACTS.**

A.       **Action is Filed in Kentucky and Transferred to West Virginia.**

This case has a long history involving two transfers between two courts. Plaintiff Daniel F. Fitzgibbon, Jr. ("Plaintiff") originally filed this action in 2001 in this Court in a case titled *Fitzgibbon v. Sport Supply Group, Inc. et al.*, Civil Action No. 3:01-cv-00007-JMH (the "First Kentucky Action"). In that original Kentucky action, Plaintiff asserted claims against various defendants including the two defendants in this action, Martin County Coal Corporation ("Martin Coal") and Sidney Coal Company, Inc. ("Sidney Coal"). Plaintiff asserted, among other things, that the defendants infringed his U.S. Patent No. 4,913,233 (the "233 Patent"). (Rec. No. 1, Memo. Order at 2). Plaintiff's patented invention "provides methods and apparatus useful primarily in the presplitting and blast removal of earth formations." (Rec. No. 23, Motion to Stay, Ex. D,

Reexamination Certificate).

Plaintiff originally named Massey Coal Company, Inc. ("Massey") as a defendant in the First Kentucky Action.  However, Massey moved to dismiss the claims against it arguing that it was only a holding company and, thus, could not have infringed the Plaintiff's patent.  (Rec. No. 23, Motion to Stay at 4).  In its Motion, Massey stated that it directly and indirectly owned subsidiaries located in West Virginia, Kentucky and Virginia.   (Rec. No. 23, Motion to Stay at 4).

Plaintiff then asked Massey by interrogatory to identify its subsidiaries. (Rec. No. 23, Motion to Stay at 4).   Massey responded with a list of nine subsidiaries, seven of which were located in West Virginia (the "West Virginia Massey Subsidiaries") and two of which – Martin Coal and Sidney Coal – are located in Kentucky (the "Kentucky Massey Subsidiaries") (Rec. No. 23, Motion to Stay at 4 & Ex. B).

The parties to the First Kentucky Action then entered an Agreed Order dismissing Massey as a defendant and Plaintiff filed an Amended Complaint naming all nine of Massey's subsidiaries as defendants – the seven West Virginia Massey Subsidiaries and the two Kentucky Massey Subsidiaries.  (Rec. No. 31, Defs' Estoppel Brief at 3).  Plaintiff also named four other defendants who were not Massey subsidiaries. (Rec. No. 31, Defs.' Estoppel Brief at 3).

The West Virginia Massey Subsidiaries then moved to dismiss the action against them for lack of personal jurisdiction.  This Court, with Chief Judge Joseph M. Hood presiding, determined that it lacked jurisdiction over the West Virginia Massey Subsidiaries.  Rather than dismissing the action against the West Virginia Massey Subsidiaries, however, Judge Hood transferred the entire action to the United States District Court for the Southern District of West Virginia.  (Rec. No. 1, Memo. Order at 2).

2

**B.     Claims against the Kentucky Massey Subsidiaries are Transferred Back to Kentucky.**

The Kentucky Massey Subsidiaries then moved to dismiss the claims against them in the West Virginia court, arguing that the court lacked jurisdiction over them.  (Rec. No. 1, Memo. Order at 4).  Before ruling on the Motion to Dismiss, the West Virginia court conducted a status conference at which the defendants requested a *Markman* hearing, a hearing that derives its name from *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) in which the Supreme Court determined that claim construction is an issue of law for the Court to resolve. This determination often entails a so-called *Markman* hearing at which the Court hears evidence and argument regarding the proper interpretation of the patent claims and their terms. According to the Plaintiff, the Kentucky Massey Subsidiaries were present at the status conference.  (Rec. No. 32, Pf.'s Estoppel Brief at 2).

After the status conference, the West Virginia court issued an order establishing certain deadlines for the *Markman* hearing. The defendants were directed to "designate the defense counsel in charge for the purpose of coordinating and presenting all issues related to the *Markman* hearing through its completion by 3/7/2005."  (Rec. No. 23, Motion to Stay at 5 & Ex. C).  On March 7, 2005, the defendants in the West Virginia action including the Kentucky Massey Subsidiaries designated counsel for the *Markman* hearing.  (Rec. No. 23, Motion to Stay at 5 & Ex. C). Several weeks later, on March 30, 2005, the West Virginia court determined that it lacked personal jurisdiction over the Kentucky Massey Subsidiaries and transferred the Plaintiff's claims against only those defendants back to this Court.  (Rec. No. 1, Memo. Order at 12, Order).

As a result, there is now a  federal action in West Virginia regarding the 233 Patent in which

3

the defendants are the West Virginia Massey Subsidiaries and four additional defendants; and this federal action in Kentucky regarding the 233 Patent in which the two Kentucky Massey Subsidiaries are defendants. Fitzgibbon is the only Plaintiff in both actions.

Fitzgibbon has also recently filed a third action in this Court asserting that three additional defendants infringed the 233 Patent. Civil Action No. 3:07-cv-00020-KKC.  This third action has no impact on the estoppel issues currently before the Court.

### C.      The West Virginia *Markman* Hearing.

On July 12, 2005, Plaintiff filed in the West Virginia action his Opening Memorandum regarding the July 29, 2005 *Markman* hearing.  All of the remaining defendants in the West Virginia action jointly filed one *Markman* Opening Brief and one Rebuttal Brief.  (Rec. No. 31, Defs.' Opening Estoppel Brief at 4).

The West Virginia court conducted a *Markman* hearing on July 29, 2005 regarding five disputed terms, all of which are also in dispute in this action. The five terms at issue in the West Virginia litigation were 1) "bag," or "bag-like device," or "inflatable bag-like device;" 2) "disposed or disposing;" 3) "spaced relation to the uppermost portion of the first quantity of explosive material;" 4) "first relatively large quantity of explosive material;" and 5) "a second relatively small quantity of explosive material." (Rec. No. 31, Defs.' Opening Estoppel Brief at 4).

### D.      The Kentucky *Markman* Hearing is Stayed.

On March 3, 2006, pursuant to this Court's Scheduling Order, the parties to this action filed a joint statement in which they identified nine disputed terms or phrases requiring interpretation by the Court through a *Markman* hearing. These nine terms or phrases consisted of the five terms or phrases in dispute in the West Virginia action and the following four additional terms: 1)"inflation

fluid;" 2)"borehole;" 3) "production holes;" and 4) "presplitting holes."(Rec. Nos. 21 and 22).

The parties filed Opening *Markman* briefs. (Rec. Nos. 25 & 27) but then entered into an Agreed Order staying the *Markman* hearing in this action pending the West Virginia Court's holding of a *Markman* hearing in that action and its ruling on the same.  The Agreed Order further required Plaintiff's counsel to file in this action a copy of the West Virginia court's *Markman* ruling within ten days of the date it was entered and required the parties to follow up with briefs ("Opening Estoppel Briefs") addressing what impact, if any, the West Virginia court's *Markman* ruling would have on this case. (Rec. No. 29).

### E.    The West Virginia *Markman* Ruling.

The West Virginia Court entered its *Markman* ruling on August 10, 2006, defining the five terms in dispute in that action as follows:

1)    *bag-like device*[1] – an item similar to, or characteristic of, an inflatable container composed of flexible material having the capability to stretch that is made, or adapted, to perform a function;

2)    *disposed* or *disposing* – placed or placing;

3)    *spaced relation to the uppermost portion of the first quantity of explosive material* – there is an air-gap in the borehole between the top of the lower-most explosive material and the bag-like device above it;

4)    *first relatively large quantity of explosive material* – the larger quantity of explosive material placed within the borehole; and

5)    *a second relatively small quantity of explosive material* – the smaller quantity of explosive material placed within the borehole.

---

[1] The West Virginia court noted that the parties had stated in their submission of terms in need of construction that the terms "bag," or "bag-like device" or "inflatable bag-like device" required construction.  The court explained, however, that the parties had stipulated as to the meaning of "device" and the court determined that "inflatable" had clear meaning.  The court declined to define the term "bag" because the word seldom appeared alone in the patent.

(Rec. No. 30, Ex. A., West Virginia Markman Decision at 19).

It appears that the West Virginia action remains pending. There is no indication in the record that the West Virginia court has determined the ultimate issue of whether the West Virginia Massey Subsidiaries infringed the Plaintiff's patent.

Plaintiff now argues the Kentucky Massey Subsidiaries are collaterally estopped from relitigating in this action the meaning of the five terms or phrases construed by the West Virginia court.

## II.    ANALYSIS.

Collateral estoppel, or issue preclusion, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984). The doctrine "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

In patent infringement cases, regional federal circuit law applies to determining whether collateral estoppel bars relitigation of issues. *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1261 (Fed.Cir.2003). In the Sixth Circuit, the doctrine of collateral estoppel requires proof of the following five elements:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation;
>
> (2) the issue was actually litigated and decided in the prior action;
>
> (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation;

6

(4) the party to be estopped was a party to the prior litigation (or in privity with such a party); and

(5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. I.N.S.*, 195 F.3d 836, 840 (6th Cir.1999).

The party asserting collateral estoppel bears the burden of establishing each of these elements. *See, e.g., Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981).

### A.     Whether the Issues Raised in this Action are Identical to the Issues Raised in the West Virginia Action and were Actually Litigated in that Action.

At the *Markman* hearing in the West Virginia court, the issue was the construction of five disputed terms and phrases contained in the 233 Patent and that issue was actually litigated. The construction of these five terms and phrases is also at issue in this action. The Defendants argue, however, that collateral estoppel should not apply in this case because the West Virginia *Markman* ruling did not interpret the four additional terms at issue in this litigation. (Rec. No. 31, Defendants' Opening Estoppel Brief at 6-7). Collateral estoppel, however, requires only that a particular fact or issue in a successive action have been decided by a prior court. It does not require that the prior court have decided *every* fact and issue in dispute in the successive action.

### B.     Whether the Construction of the Five Disputed Terms and Phrases was Necessary and Essential to a Judgment on the Merits in the Prior Litigation.

The Plaintiff argues that the West Virginia *Markman* ruling was a "judgment on the merits on the issue of claim construction" and that the "*Markman* ruling constitutes a necessary and essential judgment on the merits for purposes of collateral estoppel." (Rec. No. 32, Pf.'s Opening Estoppel Brief at 6-7). The Kentucky Massey Subsidiaries do not contest that the West Virginia court's *Markman* ruling was a judgment on the merits for purposes of collateral estoppel. (Rec. No.

31, Defs.' Opening Estoppel Brief at 13; Rec. No. 33, Defs.' Response at 5 n.7).  The agreement of the parties on this issue notwithstanding, courts disagree on whether a *Markman* ruling is a judgment on the merits for purposes of collateral estoppel.

In *TM Patents, L.P. v. International Business Machines, Corp.*, 72 F.Supp.2d 370 (S.D.N.Y. 1999), the plaintiff TM Patents charged that IBM had infringed three patents.  Prior to the action in the New York court, TM Patents had filed a complaint in a Massachusetts federal court against an IBM competitor.  The Massachusetts court construed some of the claims that were also in dispute in the New York action.  In the New York action, IBM argued that TM Patents was estopped from relitigating the construction of these claims. TM Patents argued that the Massachusetts court's *Markman* ruling was not a final judgment, because the matter was settled before the jury returned a verdict on the question of infringement. *Id.* at 375.

The New York court disagreed, stating that "[w]hether a ruling is sufficiently final turns on 'such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.'"  *Id* at 375-76 (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir.1961)).  The court recognized that "[t]he parties have not called my attention to any case in which a court has applied collateral estoppel to bar relitigation of claims construction issues decided at a prior *Markman* hearing, and I have not located any such decisions. Nonetheless, that proposition seems self-evident." *Id.* at 376.  The court reasoned as follows:

> *Markman* ushered in a new regime in patent claims construction. Prior to the Federal Circuit's ruling in 1995, disputes concerning the meaning of patent claims were submitted to a jury along with questions about validity and infringement. Thus, until there was a final judgment after a jury verdict, there was no construction of claims, see, e.g., *Tol-O-Matic, Inc. v. Proma Produkt-Und-Marketing Gesellschaft, m.b.H.*, 945 F.2d 1546 (Fed.Cir.1991), and hence, no finality for collateral estoppel purposes. However, after *Markman*, claim construction became a separate legal issue, for

8

> determination by the Court. The parties frequently litigate the meaning of those limitations prior to the trial. . .so that the Court can instruct the jury on the meaning of the patent at the outset of the case. Moreover, the Court limits itself to construing that which is necessary to the resolution of the questions of infringement and validity. The jury is not free to override the Court's construction of the disputed terms. It is hard to see how much more "final" a determination can be.

*Id*. at 378.

In *Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 147 F.Supp.2d 464 (W.D. Va. 2001), however, a Virginia federal court determined that *TM Patents* incorrectly interpreted *Markman* as "nullifying pre-existing Federal Circuit analysis regarding collateral estoppel." *Id*. at 467.

In *Kollmorgen*, the Plaintiff asserted in a Virginia federal court that the two defendants had infringed certain patents. In a prior case in Wisconsin federal court, the Plaintiff had asserted that two different parties had infringed the same patents. As in *TM Patents*, in the prior Wisconsin action, the parties settled after the court issued a *Markman* ruling and there was no jury verdict on the ultimate issue of infringement.

The Virginia court determined that, even after *Markman*, in determining the collateral estoppel effect of the prior court's *Markman* ruling, the central issue remained whether "the resolution of the issue was essential to a final judgment in the first action."*Id*. at 468-69.

The court then cited to pre-*Markman* Federal Circuit law holding that "'where a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims.'" *Id*. at 469 (quoting *Pfaff v. Wells Electronics*, 5 F.3d 514, 517 (Fed.Cir.1993) and *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 704 (Fed.Cir.1983) (holding that"judicial statements regarding the scope of patent claims are entitled to collateral estoppel effect

in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement")).

The Virginia court then determined that, "[u]nder clear Federal Circuit guidance,"collateral estoppel would apply only if the Wisconsin court's *Markman* ruling "was essential to a final judgment on the question of the patents' infringement." *Id.* 469. "As the Wisconsin Court never reached a decision as to the patent infringement claim, the [*Markman* ruling] necessarily could not prove essential to a non-existent final judgment, and thus, collateral estoppel will not apply. . ." *Id.* at 469-70. *See also Graco Children's Prods, Inc. v. Regalo Int'l*, 77 F.Supp.2d 660, 663(E.D. Pa. 1999)("*Markman* did not guarantee that collateral estoppel would apply in every case, and this Court will not extend the Supreme Court ruling to mean as much").

In *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255 (Fed.Cir.2003), the Federal Circuit held that partial summary judgment orders entered by a Virginia district court that included rulings on claim construction did not preclude the plaintiff patentee from arguing for a different claim construction in a subsequent action brought in an Alabama district court. The Virginia court had entered orders that included a claim construction, but before the case went to trial on the issue of infringement, the parties settled. *Id.* at 1259-62. The Alabama district court in the subsequent action declined to apply collateral estoppel against the patentee. *Id.* at 1260 n.1.

Applying Eleventh Circuit law, the Federal Circuit stated that the Virginia court orders "were not sufficiently firm to have preclusive effect." *Id.* at 1262. The Federal Circuit noted that no evidentiary hearing was conducted in the Virginia case and, thus, it was questionable whether the parties were 'fully heard' " on the issue. Additionally, the parties were not on notice that the orders in the Virginia case could have preclusive effect elsewhere. Finally, the Virginia court did not enter

a final order approving the proposed settlement of that action. *Id*.

In *Manders v. McGhan Med. Corp..*, 2006 WL 2372136 (W.D. Pa. Aug. 15, 2006), the court

explained the differences of opinion regarding the finality of a *Markman* ruling:

> Because of the interlocutory nature of claim construction, courts have different views of the effects of a claim construction decision. One view is that a district court has discretion to review and amend the claim construction at any time prior to final adjudication, and may even do so sua sponte. *Bateman v. Por-Ta Target, Inc.*, Civ. No. 01-5599, 2004 U.S. Dist. LEXIS 28487, at *13 (N.D.Cal., July 28, 2004) (citing *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed.Cir.1996)); see *Jack Guttman, Inc. v. KopyKake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed.Cir.2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.") Other courts, however, view *Markman* hearings as having a "special finality," which would argue against an amendment at will. See *TM Patents, LP v. IBM Corp.*, 72 F.Supp.2d 370, 378n.2 (S.D.N.Y.1999).

> These differences in opinion may be due, in part, to the fact that district courts have wide latitude in how they conduct claim construction proceedings. See *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed.Cir.2001). These proceedings "run the gamut from mid-trial sidebar conferences ... to virtual mini-trials extending over several days and generating extensive evidentiary records." *MediaCom Corp. v. Rates Tech., Inc.*, 4 F.Supp.2d 17, 21 (D.Mass.1998).

*Id*. at *1.

While the issue in the *RF Delaware*, *Kollmorgen* and *TM Patents* cases was whether a

*Markman* ruling is final where a case is terminated without a ruling on infringement or validity of

the patent, in this case the West Virginia action is ongoing.  The Court has found no cases in which

a *Markman* ruling was considered sufficiently final for collateral estoppel purposes where the action

in which the *Markman* ruling was issued was still pending.

As will be explained further below, however,  the Court has determined that the Kentucky

Massey Subsidiaries, who were not parties to the West Virginia action at the time of the *Markman*

11

hearing, were not in privity with the West Virginia Massey Subsidiaries and, thus, did not have a "full and fair opportunity" to litigate the construction of the five disputed terms and phrases. Thus, the Court need not decide whether the West Virginia court's *Markman* ruling is a judgment on the merits for purposes of collateral estoppel and declines to do so.

### C.   Whether the Kentucky Massey Subsidiaries were in Privity with the West Virginia Massey Subsidiaries.

The Kentucky Massey Subsidiaries were not parties to the West Virginia action at the time of the *Markman* hearing. By the time of the hearing, the West Virginia court had already determined that it lacked personal jurisdiction over the Kentucky Massey Subsidiaries and had transferred the claims against them to this Court. Nevertheless, Plaintiff argues that the Kentucky Massey Subsidiaries had a "full and fair opportunity to litigate" the definition of the five disputed terms and phrases because the Kentucky Massey Subsidiaries and the West Virginia Massey Subsidiaries are in privity and because they have the same counsel. (Rec. No. 23, Motion to Stay at 10, 11; Rec. No. 32, Pf.'s Opening Estoppel Brief at 7).

The Sixth Circuit has stated the following:

> [T]he concept of privity, has been divided into three categories. First, those who are *successors in interest* to a party will be bound by a judgment against that party. Second, a nonparty who *controlled* the original suit will be bound by the resulting judgment. Third, a nonparty who is *adequately represented* by a party will also be precluded from relitigating the same issues.

*Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 193 F.3d 415, 419 (6th Cir. 1999) (citing *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* ("*Becherer III*"), 43 F.3d 1054, 1070 (6th Cir. 1995) (citing *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.1977)).

There is no allegation that the Kentucky Massey Subsidiaries are successors in interest to the West Virginia Massey Subsidiaries. As to the second and third privity categories, the Sixth Circuit has stated the following:

> As to the second category-control-we agree that "'[t]o have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review.'" *Benson and Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir.1987) (citation omitted). The third privity category-adequate or "virtual" representation-requires "'an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.'" *Id.* at 1175 (emphasis added) (citation omitted). This third category may also be established by a nonparty's express agreement to be bound by or acquiescence to a party's representation. See, e.g., restatement (Second) of Judgments § 40 (1980). However, absent an express agreement to be bound, an agreement should not be inferred "' except upon the plainest circumstances.'" *Bittinger*, 123 F.3d at 882 (emphasis in original) (quoting restatement (second) of Judgments § 40 cmt. b).

*Becherer*, 193 F.3d at 423.

Plaintiff appears to argue that the Kentucky Massey Subsidiaries "controlled" the West Virginia litigation because they participated in the selection of lead counsel for the defendant group in the West Virginia case and are represented by the same attorneys as the West Virginia Massey Subsidiaries. (Rec. No. 32, Pf.'s Opening Estoppel Brief at 7). This, however, does not establish that the Kentucky Massey Subsidiaries had "effective choice as to the legal theories and proofs to be advanced" on behalf of the West Virginia Massey Subsidiaries in the West Virginia litigation.

> Examples of the "control" necessary to preclude a nonparty are: the president and sole shareholder controls his company; a parent corporation controls its subsidiary; Freeman, 771 F.2d at 864 n. 3; a liability insurer assumes control of a defense; and the indemnitor defends an action against an indemnitee. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4451, at 430-31 (1981). However, "[l]esser measures of participation without control do not suffice. Thus it is not enough the nonparty supplied an attorney or is represented by the same law firm; helped to finance the litigation; appeared as an amicus curiae; testified as a witness;

13

participated in consolidated pretrial proceedings; undertook some limited presentations to the court; or otherwise participated in a limited way. Even a nonparty who was 'heavily involved' may remain free from preclusion." Id. at 432-33 (footnotes omitted). It is essential that the nonparty have actual control. See, e.g., *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Freeman*, 771 F.2d at 864 n. 3.

*Benson and Ford, Inc.*, 833 F.2d at 1174.

Plaintiff has presented no evidence that the Kentucky Massey Subsidiaries actually controlled their West Virginia sister companies or the West Virginia litigation.

As to the third privity category – adequate or "virtual" representation – this doctrine requires more than a showing of "parallel interest or, even, a use of the same attorney in both suits." *Benson and Ford, Inc*, 833 F.2d at 1175. "The question of virtual representation is one of fact and is to be kept within strict confines. *Id.* The Fifth Circuit has stated that the types of relationships contemplated under the "virtual representation doctrine" are "estate beneficiaries bound by administrators, presidents and sole stockholders [bound] by their companies, parent corporations [bound] by their subsidiaries, and a trust beneficiary [bound] by the trustee." *Pollard v. Cockrell,* 578 F.2d 1002, 1008-9 (5th Cir. 1978) (citing *Southwest Airlines Co. v. Texas Intern. Airlines*, 546 F.2d 84, 97 (5th Cir. 1977)).

Plaintiff has cited no authority for the proposition that sister corporations are similarly bound by or accountable for each other's actions. *See, Doral Pharmamedics, Inc. v. Pharmaceutical Generic Developers, Inc.*, 148 F.Supp.2d 127, 132-33 & n.4 (D. P.R. 2001)(holding that defendant could not assert affirmative defense of judicial estoppel against plaintiff because defendant did not establish that plaintiff substantially controlled the prior litigation involving sister company or that plaintiff shared sufficient identity of interest with sister company to warrant application of virtual

representation doctrine for judicial estoppel).

Accordingly, the Plaintiff has failed to establish that the West Virginia and Kentucky Massey Subsidiaries are in privity with one another or that the Kentucky Massey Subsidiaries had a full and fair opportunity to litigate the construction of the five terms and phrases decided by the West Virginia court.

For all of these reasons, the Kentucky Massey Subsidiaries are not collaterally estopped from litigating the construction of the five disputed terms and phrases.

### D.      Judicial Estoppel and the Interest in Uniformity.

Plaintiff also argues that the Kentucky Massey Subsidiaries should be estopped from litigating the construction of the five disputed terms and phrases pursuant to the doctrine of judicial estoppel.

> Collateral estoppel prevents the relitigation of factual matters that have already been considered and decided, thus preventing repetitive litigation, while judicial estoppel applies to prevent a party from asserting an inconsistent position in a subsequent proceeding. [*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598(6th Cir.1982). The essential function of judicial estoppel is to protect the integrity of the judiciary as an institution by preventing intentional inconsistencies. Id. at 599. Consequently, judicial estoppel applies only if a party successfully asserted an inconsistent position in a prior proceeding. Id. at 599 (citing *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980); *City of Kingsport v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir.1974)). Judicial estoppel is an equitable doctrine to be applied in a court's discretion, considering such factors as whether a party's later position is "clearly inconsistent" with its earlier position, whether acceptance of a party's later position would create the perception that "either the first or the second court was misled," and whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51(2001) (internal citations omitted).

*Bullard v. Alcan Aluminum Corp.*, 113 Fed. Appx. 684 (6th Cir. 2004).

Because the Kentucky Massey Subsidiaries were not parties to the West Virginia action or

in privity with the parties to the action, the doctrine of judicial estoppel does not apply. Further, it does not appear that the West Virginia Massey Subsidiaries were successful in the West Virginia *Markman* litigation.

Finally, Plaintiff argues that the Court should adopt the West Virginia court's *Markman* ruling because of the "importance of uniformity in the treatment of a given patent" as recognized in *Markman*, 517 U.S. at 390. This interest cannot, however,  override the due process concerns of prohibiting the Kentucky Massey Subsidiaries from litigating the construction of the terms and phrases at issue.  As the Court stated in *Markman*, "issue preclusion could not be asserted against new and independent infringement defendants."  *Id*. at 391.  Further, the goal of uniformity is protected by the existence of the Federal Circuit as the exclusive appellate court for patent cases.

### III.    CONCLUSION.

For all these reasons, the Kentucky Massey Subsidiaries are not estopped from litigating the construction of the five disputed terms and phrases.  Accordingly, the Court hereby ORDERS that this matter is SET for a telephonic scheduling conference on **May 16, 2007** at **11:00 a.m.** to establish a schedule for a *Markman* hearing.  Chambers shall initiate the call. The parties SHALL contact Chambers by **May 14, 2007** with a phone number where counsel may be contacted.

Dated this 25th day of April, 2007.



**Signed By:**

***Karen K. Caldwell***

**United States District Judge**